# EXHIBIT A

EXHIBIT A

Troy B. Froderman (#012717)
tfroderman@polsinelli.com
Anthony W. Merrill (#022598)
amerrill@polsinelli.com
E. Tanner Warnick (#029100)
twarnick@polsinelli.com
**POLSINELLI PC**
One East Washington Street, Suite 1200
Phoenix, AZ 85004
Phone: (602) 650-2000
Fax: (602) 264-7033

*Attorneys for Plaintiff*

MICHAEL K. JEANES, CLERK
RECEIVED CCC #4
NIGHT DEPOSITORY

15 MAY 21   PM 6:04

FILED
BY D. CADY, DEP

PAID
319 - -
R# 24552410

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

# IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| P.F. CHANG'S CHINA BISTRO, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>FEDERAL INSURANCE COMPANY, an Indiana corporation and a wholly-owned subsidiary of the Chubb Corporation,<br><br>Defendant. | Case No. CV2015-006891<br><br>**COMPLAINT FOR**<br>**(1) BREACH OF CONTRACT, AND**<br>**(2) DECLARATORY JUDGMENT** |

Plaintiff P.F. Chang's China Bistro, Inc. ("P.F. Chang's") alleges the following claims for breach of contract and declaratory judgment against Defendant Federal Insurance Company ("Federal"):

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff P.F. Chang's is a corporation organized under the laws of the State of Delaware with its principal place of business in Maricopa County, Arizona.

2. Defendant Federal Insurance Company is a corporation organized under the laws of the State of Indiana with its principal place of business in Indiana. Federal

1

50417475.3

1  is authorized to transact business within the State of Arizona. Federal is a member of the Chubb Group of Insurance Companies and a wholly-owned subsidiary of the Chubb Corporation. Chubb & Son, Inc. is a division of Federal and is also Federal's Claims Manager with respect to the insurance policy at issue here. The allegations in this Complaint will refer to these entities collectively as "Chubb."

3.  This action arises out of an insurance contract negotiated, entered into, and issued in Scottsdale, Arizona, and thus this Court has jurisdiction pursuant to Ariz. Rev. Stat. § 12-123.

4.  Venue is proper in this district pursuant to Ariz. Rev. Stat. § 12-401 because Chubb resides outside the state, P.F. Chang's principal place of business is in Maricopa County, and the actions giving rise to P.F. Chang's claims occurred in Maricopa County.

5.  The Court has personal jurisdiction over Chubb because it purposely availed itself of the benefits of the laws of Arizona, including obtaining authorization to transact business in Arizona and entering into an agreement with P.F. Chang's, which has its principal place of business in Maricopa County, Arizona (a fact known to Chubb).

## GENERAL ALLEGATIONS

6.  P.F. Chang's incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

7.  This is an action for (1) breach of contract, and (2) declaratory judgment regarding an insurance policy.

### The Policy

8.  P.F. Chang's parent, Wok HoldCo LLC, purchased a Cybersecurity by Chubb$^{SM}$ policy, Policy No. 8223-3759 (the "Policy," attached hereto as Exhibit A), from Chubb, with a policy period of January 1, 2014 to January 1, 2015.

9.  The Policy's named insureds are Wok HoldCo LLC and any of its subsidiaries.

10. P.F. Chang's is a subsidiary of Wok HoldCo LLC.

11. The Policy has an aggregate limit of liability of $5 million minus the applicable retention amount and separate sublimits of liability and retention amounts that apply to the various insuring clauses contained in the agreement:

| Item 4. | LIMITS OF LIABILITY AND RETENTION AMOUNTS | | |
|---|---|---|---|
| | If "NOT COVERED" is inserted opposite any specified INSURING CLAUSE, such INSURING CLAUSE and any other reference to such INSURING CLAUSE in this Policy shall be deemed to be deleted. | | |
| | Insuring Clause | Each Claim Limit Of Liability | Retention Amount |
| (A) | Cyber Liability | 5,000,000 | 250,000 |
| | Additional Insuring Clauses | Single Loss Limit of Liability | Retention Amount |
| (B) and (C)(1) | Combined Limit for Privacy Notification Expenses and Crisis Management Expenses | 2,000,000 | 100,000 |
| (C)(2) | Reward Expenses | 25,000 | 5,000 |
| (D) | E-Business Interruption and Extra Expenses | 5,000,000 | $0 and 12 hours |
| (E) | E-Theft Loss | Not Covered | Not Covered |
| (F) | E-Communication Loss | Not Covered | Not covered |
| (G) | E-Threat Expenses | 5,000,000 | 250,000 |
| (H) | E-Vandalism Expenses | 5,000,000 | 250,000 |

Policy, Ex. A at Combined Privacy Notification Expense and Crisis Management Expense Endorsement.

### The Security Compromise and MasterCard's Assessments

12. P.F. Chang's operates 212 branded restaurants in the United States.

13. In June 2011, P.F. Chang's entered into a Merchant Services Agreement and an accompanying Merchant Services Bankcard Addendum with Bank of America Merchant Services, LLC ("BAMS"), under which BAMS handled certain aspects of these credit card transactions on P.F. Chang's behalf.

3

50417475.3

14. On June 10, 2014, P.F. Chang's received notification from the United States Secret Service of a potential security compromise involving credit and debit card data reportedly stolen from certain P.F. Chang's China Bistro branded restaurants located in the continental United States (the "Security Compromise").

15. P.F. Chang's immediately conducted an investigation into the potential security compromise. As a result of that investigation, P.F. Chang's determined that 33 of its P.F. Chang's China Bistro branded locations located in the continental United States were potentially affected.

16. MasterCard issued assessments as a direct result of the Security Compromise.

17. Specifically, MasterCard issued the following assessments (the "Assessments"):

- $   50,000.00 – Case Management Fee
- $163,122.72 – ADC Operational Reimbursement
- $1,716,798.85 – ADC Fraud Recovery
  $1,929,921.57

18. Upon information and belief, the "Case Management Fee" is related to considerations regarding P.F. Chang's compliance with Payment Card Industry Data Security Standards ("PCI DSS").

19. Upon information and belief, the "ADC Operational Reimbursement" represents costs, as calculated by MasterCard, to notify MasterCard cardholders affected by the Security Compromise and to reissue and deliver payment cards with new account numbers and security codes to those cardholders.

20. Upon information and belief, the "ADC Fraud Recovery" represents costs, as calculated by MasterCard, associated with fraudulent charges that may have arisen from, or may be related to, the Security Compromise.

21. Under MasterCard's security rules and procedures, MasterCard has the authority to issue assessments, like the Assessments, to a merchant for financial responsibility related to a compromise, including the Security Compromise.

4

22. The Assessments were issued to BAMS.

23. On March 11, 2015, BAMS requested that P.F. Chang's pay the Assessments.

24. On April 15, 2015, P.F. Chang's paid the full amount of the Assessments to BAMS who, upon information and belief, in turn paid MasterCard.

**Relevant Policy Provisions**

25. The Policy contains the following insuring clauses:

I. **INSURING CLAUSES**

   A. **CYBER LIABILITY**

   The Company shall pay **Loss** on behalf of an **Insured** on account of any **Claim** first made against such **Insured** during the **Policy Period** . . . for **Injury**.

   B. **PRIVACY NOTIFICATION EXPENSES**

   The Company shall pay **Privacy Notification Expenses** incurred by an **Insured** resulting from [**Privacy Injury**] or **Reputational Injury**.

   . . .

   D. **E-BUSINESS INTERRUPTION AND EXTRA EXPENSES**

   The Company shall pay:

   1. The loss of **Business Income** an **Insured** incurs during the **Period of Recovery of Services** due to the actual impairment or denial of **Operations** resulting directly from **Fraudulent Access or Transmission**, and

   2. **Extra Expenses** an **Insured** incurs during the **Period of Recovery Services** due to the actual or potential impairment or denial of **Operations** resulting directly from **Fraudulent Access or Transmission**,

   when the **Fraudulent Access or Transmission** causes an actual or potential impairment or denial of **Operations** during the **Policy Period**.

5

50417475.3

Policy, Ex. A at 1 (emphasis in original).

26. The Policy defines "Loss" as "the amount that an Insured becomes legally obligated to pay as a result of any covered Claim, including but not limited to damages . . . , judgments, settlements, pre-judgment and post-judgment interest and Defense Costs." *Id.* at 6 (emphasis removed).

27. The Policy's definition of "Claim" includes "a written demand or written request for monetary damages or non-monetary relief . . . against an Insured for an Injury[.]" *Id.* at 2 (emphasis removed).

28. The Policy's definition of "Injury" includes "Privacy Injury," which is defined as "injury sustained or allegedly sustained by a Person because of actual or potential unauthorized access to such Person's Record or exceeded access to such Person's Record, when such actual or potential unauthorized access or exceeded access occurs [during the Policy Period]." *Id.* at 5, Premier Privacy Endorsement at 1.

29. The Policy's definition of "Record" includes "a natural person's first name or first initial, and last name, in combination with . . . their credit, debit or other payment card number"; "any information concerning a natural person that is defined as [] private personal information"; and "an organization's non-public information that is [] in an Insured's . . . care, custody, or control[.]" *Id.* Premier Privacy Endorsement at 1.

30. The Policy's definition of "Privacy Notification Expenses" includes "the reasonable and necessary cost of notifying those Persons who may be directly affected by the potential or actual unauthorized access of a Record, and . . . changing such Person's account numbers, or other identification numbers and security codes[.]" *Id.* at 7.

31. The Policy's definition of "Business Income" includes "net profit or loss that would have been earned or incurred before income taxes[.]" *Id.* at 2.

50417475.3

32. The Policy defines "Extra Expenses" as reasonable expenses an Insured incurs in an attempt to continue Operations that are over and above the expenses such Insured would have normally incurred." *Id.* at 5.

33. The Policy defines "Operations" as "an Insured's business activities." *Id.* at 6.

34. Under the Policy, the "Period of Recovery of Services" begins, for Extra Expenses, "immediately after the actual or potential impairment or denial of Operations occurs," and for loss of Business Income, "twelve (12) business hours after the actual impairment or denial of Operations occurs[.]" *Id.* at Period of Recovery of Services and Extra Expense Retention Endorsement. It ends on the earlier of "the date Operations are restored, with due diligence and dispatch, to the condition that would have existed had there been no impairment or denial;" or "sixty (60) days after the date an Insured's Services are fully restored, with due diligence and dispatch, to the level that would have existed had there been no impairment or denial." *Id.*

35. The Policy provides that a "Fraudulent Access or Transmission" occurs when a person has "fraudulently accessed an Insured's System without authorization[.]" *Id.* at 5.

**Chubb's Denial of Coverage for P.F. Chang's Assessments**

36. On June 10, 2014, P.F. Chang's gave Chubb notice of the Security Compromise. Chubb issued a written acknowledgement of that notice on June 11, 2014.

37. In July 2014, P.F. Chang's tendered a claim to Chubb with respect to certain costs and expenses connected with the Security Compromise.

38. In letters sent August 11, 2014, Chubb notified P.F. Chang's that it would indemnify P.F. Chang's for certain of these costs and expenses.

39. On December 23, 2014, MasterCard issued a preliminary report setting forth the Assessments.

7

50417475.3

40. Under the terms of the Policy, the "ADC Fraud Recovery" assessment imposed by MasterCard is covered under Insuring Clause A because it is a Loss that P.F. Chang's incurred on account of a Claim for Injury made against P.F. Chang's during the Policy Period.

41. Under the terms of the Policy, the "ADC Operational Reimbursement" imposed by MasterCard is covered under Insuring Clause B of the Policy because it constitutes Privacy Notification Expenses incurred by P.F. Chang's as a result of a Privacy Injury. This assessment is also covered under Insuring Clause D.2 because it is an Extra Expense incurred by P.F. Chang's during the Period of Recovery of Services due to the actual impairment of Operations resulting directly from Fraudulent Access or Transmission.

42. Under the terms of the Policy, the "Case Management Fee" imposed by MasterCard is covered under Insuring Clause D.2 because it is an Extra Expense incurred by P.F. Chang's during the Period of Recovery of Services due to the actual or potential impairment of Operations resulting directly from Fraudulent Access or Transmission.

43. P.F. Chang's submitted these Assessments to Chubb, but Chubb has denied coverage.

## COUNT I

### (Breach of Contract)

44. P.F. Chang's incorporates by reference each of the allegations contained in the preceding paragraphs as though fully set forth herein.

45. P.F. Chang's and Federal are parties to the Policy, an express contract.

46. Chubb's conduct as described above constitutes a material breach of the Policy.

47. As a direct and proximate result of these breaches, P.F. Chang's has suffered damages in an amount to be proven at trial.

## COUNT II

### (Declaratory Judgment)

48. P.F. Chang's incorporates by reference each of the allegations contained in the preceding paragraphs as though fully set forth herein.

49. As set forth above, the Policy provides coverage for assessments imposed by credit-card companies in relation to fraud recovery, card reissuance costs, and PCI compliance considerations stemming from the Security Compromise.

50. Chubb has asserted that the Policy does not provide coverage for these assessments.

51. P.F. Chang's has already received these assessments from MasterCard and anticipates receiving a similar assessment from another credit-card company in the future.

52. This controversy between P.F. Chang's and Chubb relates to the Policy and is present, substantial, and justiciable, and sufficiently invokes this Court's powers pursuant to Ariz. Rev. Stat. § 12-1831 *et seq.* to declare the Parties' rights and liabilities.

53. The actual controversy between the Parties warranting declaratory judgment includes, but is not limited to, whether the Policy covers the assessments set forth above.

### PRAYER FOR RELIEF

WHEREFORE, P.F. Chang's prays for judgment against Federal Insurance Company as follows:

A. Compensatory, consequential, and incidental damages in an amount to be proven at trial;

B. An award of reasonable attorneys' fees and costs and disbursements for this action, as provided under the insurance policies, Ariz. Rev. Stat. §§ 12-341.01 and 12-341, the common law, and other applicable law;

C. Prejudgment interest at the highest rates permitted by law and from the earliest date until paid in full;

50417475.3

1     D.     Post judgment interest at the legal rate for all sums awarded herein;

2     E.     A judicial declaration that the Policy provides coverage for the losses and liabilities set forth in this Complaint; and

    F.     Such other relief as the Court deems just and proper.

Dated this 21st day of May, 2015.

                               **POLSINELLI PC**

                               By: _/s/ Tanner_____
                                   Troy B. Froderman
                                   Anthony W. Merrill
                                   E. Tanner Warnick
                                   One E. Washington St., Ste. 1200
                                   Phoenix, AZ 85004

                                   *Attorneys for Plaintiff*

50417475.3